IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| HARRIET A. KLONTZ<br>3761 Chesapeake Street, N.W.<br>Washington, D.C.   20016<br><br>    Plaintiff,<br><br>v.<br><br>ASSOCIATION OF CORPORATE COUNSEL<br>1025 Connecticut Avenue, N.W., Suite 200<br>Washington, D.C. 20036<br><br>    Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>) CIVIL ACTION NO. 13-cv-527<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## **COMPLAINT**
### (AGE DISCRIMINATION IN EMPLOYMENT)

Plaintiff Harriet A. Klontz brings this civil action against Defendant Association of Corporate Counsel (ACC) under the Age Discrimination in Employment Act of 1967 (ADEA), 29 U.S.C. § 621, *et seq*.   Plaintiff was wrongfully denied full-time employment by Defendant on account of her age and, as a result, suffered compensable injury and economic loss.

### **JURISDICTION**

1. This Court has jurisdiction over this civil action under the AEDA.   Plaintiff has exhausted her administrative remedies by having filed a formal complaint with the United States Equal Employment Opportunity Commission (EEOC) and having been issued a formal Notice of Right to Sue.

## VENUE

2.     Venue is proper in this judicial district because Plaintiff is a resident of the District of Columbia, Defendant's principal office is in the District of Columbia, and Plaintiff was employed by Defendant in the District of Columbia.

## PARTIES

3.     Plaintiff is a citizen of the United States and has resided in the District of Columbia for over 40 years.   Plaintiff is 64 years old.

4.     Defendant is an association of attorneys whose principal offices are in the District of Columbia.

## FACTUAL BACKGROUND

5.     Plaintiff was employed by Defendant in the position of Large Law Coordinator from January 31, 2011, through June 13, 2012.   Her position was part-time (20-25 hours/week).

6.     Initially, Plaintiff's immediate supervisor was Yvonne Estime, Associate General Counsel.   Plaintiff also did work assigned by Danielle Boshart, Director of Membership, and Robin Grossfeld, Vice President of Membership, Chapters, and Communications.

7.     In January, 2012, Ms. Estime transferred to another position and was replaced by two newly-hired attorneys.   Before that, Ms. Estime, Ms. Boshart, and Ms. Grossfeld told Plaintiff that they were pleased with Plaintiff's work performance and that they hoped to make her position full time in April, 2012.

8.     As a part-time employee, Plaintiff was not eligible for year-end bonuses that ACC generally gave to full-time employees on an annual basis.   However, on February 22, 2012,

Plaintiff was given a special award of $2,500, an amount that was approximately 10% of her salary earned during 2011.

9. In a memorandum accompanying this special award, Veta Richardson, Defendant's President, informed Plaintiff that she was given the award because "ACC had a good year and you are a contributor to ACC's success."

10. In early March, 2012, a copy of a job posting for the Membership Coordinator position was placed on Plaintiff's desk. The Membership Coordinator was a full-time position. Upon information and belief, the salary for that position was $40,000-$50,000/year.

11. Plaintiff, having learned of that job opening, applied for that position on March 29, 2012.

12. Plaintiff was interviewed for the position by Dominique Evans, Membership Manager, the ACC employee to whom the Membership Coordinator would report.

13. From the time that Plaintiff began working for Defendant until the time she was interviewed by Ms. Evans, Plaintiff never told anyone at ACC that she intended to work for ACC for any set period of time. In fact, Plaintiff told her supervisors at ACC that she wanted to continue to work there and that she wanted to become a full-time employee.

14. When Plaintiff was interviewed by Ms. Evans, Ms. Evans asked her, "How long would you plan to stay in this job?" Plaintiff responded, "A long time." At the end of the interview, Ms. Evans said to Plaintiff, "I think that you are great!!"

15. The same week that Plaintiff was interviewed by Ms. Evans for the Membership Coordinator position, Plaintiff was asked by Jinna Pastrana, one of the attorneys who replaced

Ms. Estime, to apply for another full-time position, as Large Law Coordinator.  (The position Plaintiff held was to be converted from a part-time to a full-time position.)  That position was not posted until May, 2012.

16. Before May, 2012, Plaintiff was informed by Ms. Boshart that ACC "really liked me and that I was one of the top candidates for the Membership Coordinator position," but that ACC did not select Plaintiff for the position because ACC wanted someone long-term.

17. At no time before Plaintiff applied for the Membership Coordinator position, during the interview for that position, or after the interview and until she was informed that she was not selected for the position did Plaintiff ever say directly, or say or do anything to suggest or indicate, that she did not intend to stay employed at Defendant for a long time.

18. On June 13, 2012, Anne Baccich, Defendant's Senior Vice President and Chief of Staff, gave Plaintiff a memorandum signed by Shannon McGahey, Director of Administration, that informed Plaintiff that she was being terminated immediately.  The only reason given to Plaintiff for this action was that she was not selected for the full-time Large Law Coordinator position.

19. Plaintiff was not given any formal performance reviews during the time Plaintiff was employed by Defendant.  The only written comment Plaintiff received concerning her performance was the February 22, 2012, memorandum from Ms. Richardson, Defendant's President, that accompanied the special performance bonus that Plaintiff was given by Defendant.  Plaintiff at no time was told, and is not aware, of any negative information or complaints in her personnel file concerning her work performance at ACC.

20. Thereafter, Plaintiff prepared and filed with the EEOC a Charge of Discrimination that asserted that ACC had violated the ADEA.

21. Following the filing of that Charge of Discrimination, the Plaintiff and ACC agreed to mediate the dispute with the Washington office of the EEOC.

22. On November 1, 2012, Plaintiff and ACC met with an EEOC representative for the mediation session. ACC was represented by Ms. Baccich, James Merklinger, ACC General Counsel, and outside counsel.

23. Following discussions between the parties, the parties entered into a Mediation Settlement Agreement. The EEOC prepared the initial draft of the document and presented it to Plaintiff and ACC for review and comment. Following their review of the draft agreement, the ACC representatives requested that certain changes be made to the agreement. Plaintiff consented to those changes.

24. Plaintiff and ACC, by Ms. Baccich, then executed the agreed-upon version of the Mediation Settlement Agreement (Agreement), a true copy of which is attached hereto as Exhibit A.

25. Paragraph 5A. of the Agreement states as follows: "The parties acknowledge that the Charging Party [Plaintiff] and the Respondent [ACC] have entered into a separate agreement to which the EEOC is not a party."

26. Paragraph 6 of the Agreement states, in part, as follows: "The parties agree that . . . this agreement may be specifically inforced in court by the EEOC or the parties and may be used as evidence in a subsequent proceeding in which a breach of this agreement is alleged."

27.     At no time on November 1, 2012, while the parties were at the EEOC Washington office, or at any time thereafter, did the ACC representatives or ACC's outside counsel state, or indicate, that any one or more of them (all of whom are attorneys) did not understand the meaning of the document that (a) the EEOC prepared; (b) at ACC's request, EEOC amended; and (c) ACC, by Ms. Baccich, executed.

28.     Prior to the time that Plaintiff and ACC executed the Agreement, the only "separate agreement to which" Plaintiff and ACC agreed was that they would enter into mediation with the EEOC.

29.     On January 2, 2013, Plaintiff executed and tendered to ACC for its signature a document entitled "AGREEMENT BETWEEN HARRIET KLONTZ AND ASSOCIATION OF CORPORATE COUNSEL RELATING TO CHARGE NUMBER 570-2012-01861" (Separate Agreement).   A true copy of that document is attached hereto as Exhibit B.

30.     The Separate Agreement recited the agreement reached by Plaintiff and ACC to enter into EEOC mediation.

31.     ACC refused to execute the Separate Agreement.

32.     After November 1, 2012, Defendant demanded that, as a condition to Defendant honoring the terms of the Agreement, Plaintiff enter into a separate agreement containing terms to which Plaintiff had not agreed prior to execution of the Agreement.   Plaintiff declined to enter into the agreement that ACC demanded Plaintiff enter into as a condition to Defendant honoring the terms of the Agreement.

## CAUSES OF ACTION

### Count 1:   Violation of the ADEA

33. The preceding paragraphs are incorporated herein as if fully set forth.

34. In clear and deliberate violation of the ADEA, ACC refused to hire Plaintiff for the Membership Coordinator position because of her age.

35. This unlawful act caused direct economic damages to Plaintiff.

36. Under the ADEA, Plaintiff is entitled to be compensated for the economic damages that she suffered as a result of Defendant's violation of the ADEA.

### Count 2:   Breach of the Agreement

37. The preceding paragraphs are incorporated herein as if fully set forth.

38. Paragraph 7.A. of the Agreement required that Defendant pay Plaintiff $5,000.00 after January 1, 2013 but no later than January 15, 2013.

39. Defendant did not make that payment.

40. Defendant is in breach of the Agreement.

## REQUESTS FOR RELIEF

Plaintiff requests that the Court:

41. As to Count 1, enter judgment in Plaintiff's favor and against Defendant in an amount that fully compensates Plaintiff for her economic damages as a result of Defendant's violation of the ADEA, which Plaintiff reasonably believes is not less than $200,000, plus costs, interest, and reasonable attorney's fees.

42. In the alternative, as to Count 2, enter judgment in Plaintiff's favor and against Defendant in the amount of $5,000, plus costs, interest, and reasonable attorney's fees.

43. Grant such other and further relief as the Court shall deem proper.

Respectfully Submitted,

_____
DAVID S. KLONTZ
D.C. Bar No. 243568
3761 Chesapeake Street, N.W.
Washington, D.C.  20016-1813
Tel. (202) 362-4602
Fax (202) 686-3759
davidklontz@verizon.net

ATTORNEY FOR PLAINTIFF

## Jury Demand

Plaintiff demands trial by jury as to all issues in this matter as to which she is permitted by statute or otherwise to a trial by jury.

_____
David S. Klontz
Plaintiff's Attorney